## CONSTRUCTION OF THE WORKMEN'S COMPENSATION ACT.

Superior Court of Cincinnati.

JOHN E. SCHAEFER v. THE CINCINNATI BICKFORD TOOL·COMPANY.

Decided, January 24, 1913.

*Compensation for Injuries Sustained by Employes—Right of Recovery on the Ground of Negligence Enlarged—Former Defenses Eliminated—Test of Employer's Liability—Section 1465-60.*

1. The Workmen's Compensation Act, General Code, Section 1465-60 (102 O. L., 529, Sec. 21-1), which provides that an employer of five or more workmen, who has not paid the premiums prescribed by said act, shall be liable in damages to any employe for injury caused by "the wrongful act, neglect or default" of such employer, his officers, agents, or other employes, enlarges the basis for recovery on the ground of negligence as it exists at common law, not only by taking away the defenses of the fellow-servant rule, contributory negligence, and assumption of risk, but also by making such employer liable in damages for injuries caused by any wrongful act, neglect or default, gross or slight, which causes such injuries.

2. The test of liability, under General Code, Section 1465-60, is not whether the employer exercised ordinary care but whether he was guilty of *any* wrongful act, neglect or default, which caused the injuries.

*Wallace Burch* and *E. W. Kemper,* for plaintiff.
*Cohen, Mack & Hurtig,* contra.

PUGH, J.

The plaintiff, John E. Schaefer, on May 28th, 1912, while in the employment of the defendant company as a blacksmith, was injured while engaged in "stoving" a piece of "high speed" steel, and, on August 24th, 1912, brought this suit against said company for damages. The case was tried before this court and a jury, and resulted in a verdict for the defendant. It now comes before the court on motion for a new trial.

The plaintiff alleged that he was directed and required, against his objection, to "stove" a "high speed" steel tool by what

we will call the "hammer and anvil" method, which was unsafe and dangerous, when his employer could have used or caused to be used other methods, which were not dangerous, such as the steam-hammer or the stoving machine, and that while "stoving" the tool as ordered, a fragment of steel flew off from it with great force and velocity and struck his right leg and became imbedded in it at or near the knee joint. He further stated that the work could be done as well or better by using a steam-hammer or stoving machine, without any risk to the workman, and that these were the means of doing such work in common use by manufacturers engaged in the same business as the defendant.

No claim was made that any of the tools furnished him were defective, or out of repair; but he says that the process of "stoving" which he was ordered to use—the "hammer and anvil" method—was dangerous, and that his employer was guilty of a "wrongful act, neglect and default" in compelling him to use it and in failing to provide a steam-hammer or stoving machine as requested.

The defendant is an employer of more than five workmen and has not paid the premiums provided for in the Workmen's Compensation Act, and its liability for injuries to its employes is determined by Section 21-1 of that act (102 O. L., 529), which is now Section 1465-60 of the General Code. The issue for the jury was, therefore, whether the defendant had been guilty of a "wrongful act, neglect or default" in the respect set out in the petition.

(1). The jury was instructed that it was the duty of an employer to exercise ordinary care and prudence, with regard to the safety of his employes, in selecting the method of work which he directs them to use.

(2) Also, that a failure to exercise such ordinary care and prudence is a wrongful act, neglect or default, for which, if injury is caused thereby, he is liable in damages.

(3). Also, that if an employer did exercise such ordinary care and prudence, he is not liable in damages, even though injury did result from using the method of work prescribed by him.

These· instructions were coupled with a definition of what constitutes ordinary care and prudence, and the various applications of these rules of law to the circumstances disclosed in evidence were pointed out. The instructions to the jury were not given in such abstract and general terms as here stated, but the principle underlying them was the one above set forth.

This principle is that of the common law, and as there was no defense of the fellow-servant rule, contributory negligence or assumption of risk, the case was submitted to the jury in practically the same way and under the same rule of law as if the Workmen's Compensation Act had never been passed—or, at least, had no application to the case.

After mature consideration, the court is satisfied that these instructions were erroneous. They were given to the jury in the belief that General Code, Section 1465-60, was not intended to enlarge the common law basis of recovery for negligence, other than by taking away from an employer the defense of the fellow-servant rule, contributory negligence and assumption of risk. The following considerations will show that such belief is not well founded:

. The grounds of recovery set out in General Code, Section 1465-60, are "the wrongful act, neglect or default" of the employer. There is no qualification whatever, nothing to indicate that the "neglect or default" which fixes liability must be gross neglect, or slight neglect, or such neglect as is entailed by failure to exercise ordinary care and prudence. The naked words, "neglect or default" employed, import, *prima facie*, all neglects and all defaults.

To limit these terms to such neglect or default as is the equivalent of failure to exercise ordinary care and prudence, as the court did in its instructions, requires a resort to construction; it necessitates reading into the language of the statute some qualification not expressed therein.

Is there any sufficient reason why such an employer should not be held to the plain, unqualified language of the law?

He has been invited to avail himself of the protection against liability of this kind afforded him by the preceding sections of

the Workmen's Compensation Act, and has refused to accept it. If anything, this furnishes a reason why his liability should be extended, not limited, by construction.

The idea of a higher degree of care and prudence in the matters of every-day life, than is exacted at common law from a master towards a servant, is quite familiar. It is the common law rule governing the conduct of common carriers with regard to their passengers. Whether this same rule should or should not govern the relation between master and servant is merely a question of policy. There is nothing startling in the conception, nor would there be any special hardship imposed thereby on the employer which is not imposed as heavily on the common carrier.

It is argued, with some force, that the statutory words "wrongful act, neglect or default," are already known to the law, and have always been understood to import such negligence only as is otherwise expressed as the failure to exercise ordinary care and prudence. But I am unable to agree with counsel on this point. The principal instance used as an illustration seems to me to indicate rather the contrary of what is claimed for it. This is in the phrase found in General Code, Section 10770, which gives a cause of action for death wrongfully or negligently caused. The words are the same as in General Code, Section 1465-60, "wrongful act, neglect or default," and it is argued that these have not been construed to give a cause of action for any negligence unless it amounted to a want of ordinary care. This argument overlooks the phrase which follows the words in question in the death statute (General Code, Section 10770), which makes the whole read "wrongful act, neglect of default, such as would have entitled the party injured to maintain an action and recover damages in respect thereof, if death had not ensued." It appears to me at least equally as reasonable to say that, but for the qualifying words following the expression, "wrongful act, neglect or default" in General Code, Section 10770, recovery might have been had, where death ensued, in cases where the only neglect shown is what is called slight negligence, and where no recovery would have been possible had the injured party lived.

The imposition on employers, who refuse to accept the protection offered by the preceding sections of the Workmen's Compensation Act, of a liability greater than has ever before existed in this state, seems to have been deliberately intended by the language of General Code, Section 1465-60. It was known, when the act was being considered, that it was exciting much opposition and that vigorous efforts would be made to prevent employers of labor from accepting its provisions. The possibility that the law, when enacted, would become a dead-letter was very great, and it was desirable to adopt every legitimate means of preventing this. While the statute was intended for the benefit of employer and employe alike, it was known that many persons interested in business thought it would work great hardship on the former.

To make the statute effective, it was deemed necessary to insert a coercive clause. In view of the decision in *Ives* v. *Ry. Co.*, 201 N. Y., 276, it was obviously not expedient to risk the validity of the law by absolutely compelling employers to adopt its provisions, but it was apparent that every means short of this would be necessary. The history of the bill and its progress through the two branches of the General Assembly, and the arguments reported in the case of *State, ex rel,* v. *Creamer,* 85 Ohio St., 349, wherein the constitutionality of the act was upheld, indicate clearly the necessity of some degree of coercion. Possibly, General Code, Section 1465-60, as herein construed, goes to limits of constitutionality.

The duty of the court is to lend its aid to effectuate the intention of the Legislature. While it is a safe and necessary proceeding, in many cases, to resort to artificial rules in construing a statute and to read into it something not therein expressed in order to arrive at the intention of the Legislature, it is none the less well established law that where the intention is manifest, there is no place for rules of construction.

To the court it seems clear that every means of making the statute effective should be employed, if it can be done without violence to the language used—and the more effective it can be made, with regard to the ends contemplated by the Legislature,

the better.   It follows that the greater the liability imposed on employers by General Code, Section 1465-60, the more likely are they to accept these provisions of the act which relieves them from such liability.

The opinion of the court, therefore, is that to relieve an employer from liability under General Code, Section 1465-60, a higher degree of care and prudence than ordinary must be exercised by them.   The degree of care required is such that it excludes the existence of any "wrongful act, neglect or default" whatever.

The plaintiff's motion will be granted, and the verdict set aside and a new trial ordered.